Filed 2/25/14  Marriage of Hill and McKinley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of KATHRYN ANNE HILL and NED DANIEL McKINLEY. | C071744 |
| KATHRYN ANNE HILL, | (Super. Ct. No. 10FL03416) |
| Appellant, | |
| v. | |
| NED DANIEL McKINLEY, | |
| Respondent. | |

This is a judgment roll appeal in a marital dissolution proceeding.  Because the appellant, Kathryn Anne Hill, has failed to show any error on the face of the record, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Hill and respondent Ned Daniel McKinley were married in December 1997 and separated in 2010.  They have six sons together, whose ages in 2012 ranged from 4 to 13.  Hill filed her petition for dissolution of the marriage in May 2010.

In June 2010, the court made temporary orders for McKinley to pay Hill $814 in child support and $1,018 in spousal support per month. The support orders were based on McKinley having the children approximately 85 percent of the time and on McKinley earning $9,487 per month and Hill earning nothing. The court ordered Hill to submit to a vocational evaluation and to seek full-time employment by submitting five job applications every two weeks. The court also ordered McKinley to pay Hill $10,000 in attorney fees at the rate of $200 per month, with an initial payment of $5,000 to be made from a money market account in McKinley's name if the account contained that amount.

In November 2010, Hill started working part-time in retail sales.

The case was ultimately set for trial, but the parties reached an agreement at a settlement conference in April 2011. The parties agreed that McKinley would pay Hill $943 in child support and $592 in spousal support per month based on McKinley having the children approximately 73 percent of the time and on McKinley earning $9,487 per month and Hill earning $867 per month. The agreement noted the obligation of both parties "to be self-supporting," continued in place the seek-work provision for Hill (five job applications every two weeks), and provided that Hill's "efforts to secure full-time employment shall be reviewed in 90 days." The review hearing was set for July 2011.

In advance of the July 2011 hearing, McKinley filed papers requesting that the court impute $40,000 per year in income to Hill. For her part, Hill requested spousal support of no less than $800 per month and rescission of the seek-work order.

The record on appeal does not reveal exactly what happened in July 2011, but the matter was set for trial again in October 2011. In October, however, the parties apparently reached another agreement.[1] Child support was reduced to $491 per month

---

[1]     The only record we have of what (apparently) happened in October are two paragraphs and a third partial paragraph from a judgment on reserved issues that are quoted in a subsequent court ruling.

and temporary spousal support was increased to $892 per month.[2]  It was noted that the temporary spousal support figure did not reflect judicial consideration of the Family Code section 4320 factors (the 4320 factors).  A further review hearing was set for April 3, 2012, and the court reserved jurisdiction to consider evidence bearing on the 4320 factors at that time.

Judgment was entered in the case in November 2011, but the judgment itself  is not contained in the record on appeal.  Furthermore, it appears another judgment, this one on reserved issues, was entered in February 2012.  This judgment on reserved issues appears to have incorporated the provisions of the parties' agreement from October 2011.

In advance of the April 2012 review hearing, Hill filed a declaration requesting a $300 increase in spousal support and a reduction of the amount of job applications she had to submit, if not relief from the seek-work order altogether.  McKinley continued to argue for imputation of income to Hill.

The review hearing was held on April 3 and 26, 2012.  Both parties testified at the hearing.  The certified vocational rehabilitation counselor who had performed Hill's vocational evaluation also testified.  There is no reporter's transcript, agreed statement, or settled statement from the hearing.

The day after the April hearing, Hill apparently filed a petition for Chapter 7 bankruptcy.  The trial court also apparently issued a tentative decision that is not included in the record on appeal.  Hill filed objections to the tentative decision on May 17.

At the time of the April hearing, a motion for attorney fees was apparently pending in which McKinley requested an award of fees from Hill.  (The moving papers are not included in the record on appeal.)  The court "bifurcated" that issue from the

---

[2]     Both amounts were based on the assumption that Hill was working 32 hours per week; alternate, lower figures were to apply if Hill worked 40 hours per week.

3

support issues and set the issue of attorney fees for hearing on May 29.  Hill filed her opposition to the fee motion on May 22.  An evidentiary hearing on the motion at which both parties apparently testified was held on May 29; again, however, there is no reporter's transcript, agreed statement, or settled statement from the hearing.

On May 31, the court issued a "TENTATIVE DECISION FOLLOWING TRIAL" (fn. omitted) on the motion for attorney fees.[3]  The court ordered Hill to pay McKinley $5,000 in attorney fees forthwith pursuant to Family Code sections 2030 and 2032.

On June 1, the trial court issued an "AMENDED PROPOSED STATEMENT OF DECISION AND JUDGMENT FOLLOWING TRIAL" for the April support hearing. The court found (among many other things) that McKinley, 38 years old and in excellent health, was a former Navy SEAL employed by the United States Marine Corps earning $9,775 per month (the equivalent of $56.20 per hour for a 40-hour work week). Meanwhile, Hill, 41 years old and in moderate health, was working as a skin care consultant at Sephora 32 to 34 hours per week earning $11 per hour.  During the course of the parties' approximately 12-year marriage, Hill did not "engage[] in income producing employment" but "was fully engaged in pursuing her doctoral education." (Hill apparently has a master's degree and a doctoral degree in modern French studies.) The court found that McKinley was the primary custodial parent, with the parties "shar[ing] the children with a pattern that actively involves balancing employment, the children's schools, daycare, and activities."

---

[3]     The tentative decision provided that it would become the court's statement of decision unless within 15 days either party filed a document specifying controverted issues or making proposals not covered in the tentative decision.  It does not appear from the record that either party filed any such document.  It does appear that Hill tried to file a motion for reconsideration within that time frame but was unable to do so because she failed to tender the filing fee.  She subsequently filed that motion on June 22 but thereafter dropped the hearing on the matter.

4

The court noted that the vocational evaluator testified that Hill had "various employment skills for and in, inter alia, office management, and administrative assistance; with a compensation potential for as low as $40,000 per year." According to the evaluator, Hill was "both underemployed and lacking in significant upward employment."

The court found that Hill had "the ability to work in positions that pay substantially more than she earns; and, further, that positions commensurate with her knowledge, skills, and abilities exist"; however, she had "failed to diligently seek fulltime gainful employment consistent with her knowledge, skills and abilities" and "without direct judicial intervention, will engage in ongoing and future behaviors to deliberately avoid her obligation toward her children to obtain meaningful and more remunerative gainful employment."

The court imputed $40,000 in annual income to Hill beginning June 1, 2012 and, based on that imputation, modified child support for three periods -- October through December 2011, January through April 2012, and May 2012 forward -- based on three guideline child support calculations that are not included in the record on appeal.[4] The

---

[4]     For the first period, the trial court adopted McKinley's exhibit 7; for the second period, the court adopted McKinley's exhibit 8; and for the third period, the court adopted a guideline calculation that was attached to the court's tentative decision. None of those documents are contained in the record on appeal.

In her opening brief, Hill asserts that the modified child support order (for which period, she does not say) "resulted in [her] paying $228.00 in monthly child support to [McKinley]." There is, however, no support for this assertion in the record on appeal, since the actual child support figures the court ordered were not contained in the trial court's ruling, but instead were contained in documents *referenced* in the trial court's ruling, and Hill failed to designate those documents for inclusion in the record on appeal.

5

court also reduced spousal support to $420 per month beginning May 1, 2012 and ordered that spousal support would terminate altogether on June 30, 2014.

Hill timely appealed from both the May 31 ruling and the June 1 ruling.

DISCUSSION

I

*Standard Of Review*

On appeal, we must presume the trial court's rulings are correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, we must adopt all inferences in favor of those rulings, unless the record expressly contradicts those inferences. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

It is the burden of the appellant to provide an adequate record for us to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) Here, Hill elected to proceed with her appeal on only a partial clerk's transcript. (Cal. Rules of Court, rule 8.121.) Thus, as we have noted, the appellate record does not include a reporter's transcript, agreed statement, or settled statement of the hearings in this matter. This is referred to as a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.)

When an appeal is on the judgment roll, we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521.) "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." (*Riley v. Dunbar* (1942) 55 Cal.App.2d 452, 455.) Moreover, when the court issues a statement of decision, a party must timely bring any omissions or ambiguities in the court's decision to the trial court's attention; if the party

6

does not do so, that party waives the right to claim on appeal that the statement was deficient in these regards, and the appellate court will imply findings to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.) All of these rules apply to Hill even though she is representing herself on appeal. (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121; see also *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)

With these rules in mind, we turn to Hill's arguments on appeal.

## II

### *Modification Of Spousal Support*

Hill first contends the trial court erred in failing to consider and apply all of the appropriate evidence to the 4320 factors. Family Code section 4320 identifies various factors a court must consider in ordering spousal support. (See *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93 ["In awarding spousal support, the court must consider the mandatory guidelines of section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion"].) We are foreclosed from addressing this argument by the state of the record on appeal. Because this is a judgment roll appeal, we do not know what evidence was presented at the support hearing in April 2012. Accordingly, we cannot assess the trial court's application of that evidence to the 4320 factors.

To the extent Hill's argument references evidence she presented to the trial court in a declaration in advance of the hearing, that is of no use to us because even if the court considered that evidence, we do not know what *other* evidence was presented to and considered by the court at the hearing. Only based on *all* of the evidence presented to the

7

court could we consider Hill's argument that the court failed to consider and apply all of the appropriate evidence to the 4320 factors.

To the extent Hill contends the trial court erred by ignoring some of the 4320 factors, from the face of the record this does not appear to be true. In its statement of decision on the support issues, the trial court included a chart showing the various factors described in subdivisions (a) through (o) of Family Code section 4320. Next to each factor, the trial court set forth its assessment of how that factor applied to each party and its finding of how that factor impacted the ultimate decision on the issue of what spousal support should be.

Even if the court did omit one or more of the 4320 factors from the express analysis in its statement of decision, however, Hill cannot use that point to her benefit because (so far as we can determine from the record on appeal) she did not file any objections to the statement of decision.[5] "If the party challenging the statement of decision fails to bring omissions or ambiguities in it to the trial court's attention, then, under Code of Civil Procedure section 634, the appellate court will infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60, citing *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) Thus, on the record before us, we must presume both that the court made all findings necessary to support its decision and that all of those findings were supported by the evidence presented to the court.

---

[5] As we have noted, Hill filed objections to the court's *tentative decision*, but not to the court's later proposed *statement of decision*. In any event, it does not appear that Hill raised the issue now before us even in her objections to the tentative decision.

## III

### *Imputation Of Income*

Hill next argues that the trial court erred in imputing income to her without proper evidence or consideration of the evidence.  Again, we are foreclosed from considering this argument because this is a judgment roll appeal and the evidence on which the trial court acted in not before us.

To the extent Hill complains that McKinley "did not show how imputing wages upon [her] would be in the best interests of the children,"[6] we must presume that he did because we do not have a record before us to show otherwise.  To the extent Hill complains that the "[t]rial court doesn't state how imputation is in the children's best interest," we must assume, under the authorities cited above, that the trial court nonetheless *implicitly* found that basing the support orders on Hill's earning capacity, rather than her actual earnings, was consistent with the best interests of the children, and we must presume there was evidence to support that finding.

## IV

### *Termination Of Spousal Support*

Hill contends the trial court abused its discretion in ordering that spousal support will terminate in June 2014 because "[i]t is generally believed that a court cannot set a termination date for a marriage of long duration," and a marriage of 12 years and four months is of long duration.  Hill is mistaken as to the court's authority.  "Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration."

---

[6]  "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."  (Fam. Code, § 4058, subd. (b).)

9

(Fam. Code, § 4336, subd. (a).) This means that *if* the court does not order (or the parties do not agree) otherwise, jurisdiction to order spousal support is retained indefinitely where the marriage is of long duration. "All this means here, however, is that the court retained jurisdiction indefinitely until it entered 'a court order terminating spousal support' . . . ." (*In re Marriage of Christie* (1994) 28 Cal.App.4th 849, 858.)

Here, the court ordered termination of spousal support in June 2014. Thus, the court retains jurisdiction over spousal support until that date, unless before that date the court makes a different order. Contrary to Hill's argument, this order was within the court's power.

V

*Modification Of Child Support*

Hill complains that the trial court did not mention Family Code sections 4053 and 4057 in its statement of decision with respect to the modification of child support. From this omission, Hill concludes that the trial court "erred in not utilizing the correct codes."

The fact that the trial court did not mention Family Code section 4053 or section 4057 in its statement of decision does *not* equate to the court "utilizing the [in]correct codes." Because we must adopt all inferences in favor of the court's rulings unless the record expressly contradicts those inferences, we must assume here that the trial court used the correct code provisions in modifying child support because Hill has not positively shown us that the court did not do so.

To the extent Hill contends "[t]he issue of child support should have been heard in a separate trial rather than being submerged under [McKinley]'s motion for spousal [support] modification," she cites no authority that supports that contention.

As for Hill's argument that "[t]he trial court did not fully consider the actual financial situations of each party in determining support or modification," again, on the record before us, we must presume that the court *did* do so.

10

## VI

### *Changed Circumstances*

Hill contends the trial court erred in modifying support because McKinley failed to show a material change in circumstances from the time of the April 2011 settlement agreement to the time of his "modification motion" three months later in July 2011. It is generally true that to obtain a modification of a previous support order, the moving party must show a material change of circumstances since the time of the prior order. (*In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1060 [spousal support]; *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1303 [child support].) Nevertheless, Hill's argument is without merit for at least two reasons.

First, at the same time the parties agreed to certain support figures in April 2011, the parties agreed that Hill's "efforts to secure full-time employment shall be reviewed in 90 days," and a review hearing was set for July 2011. Thus, what apparently occurred in July 2011 was not a motion to modify support filed by McKinley, as Hill repeatedly asserts, but a review hearing that both parties agreed would be held. Hill fails to point to any authority requiring a showing of changed circumstances in such a situation.

Second, even if the changed circumstances rule did apply here, that rule "was . . . not [designed] to circumvent the goal that supported spouses become self-supporting within a reasonable period of time." (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 804.) "[A] material change of circumstances warranting a modification of spousal support may stem from unrealized expectations embodied in the previous order. . . . Thus, if a court's initial spousal support award contemplates that a supported spouse will take some action to decrease the need for spousal support following the issuance of the order and the supported spouse fails to take that action, the court may modify the award on the ground of changed circumstances." (*In re Marriage of Shaughnessy* (2006) 139

11

Cal.App.4th 1225, 1238.) And although *Shaughnessy* speaks only in terms of spousal support, we see no reason why the same rule should not be applied to child support.

Here, Hill was first made aware of her obligation to become self-supporting no later than June 2010, when the court ordered her to submit to a vocational evaluation and to seek full-time employment. Although the parties agreed to certain support figures in April 2011, at the same time they agreed to continue in place the seek-work order and to set a review date regarding Hill's efforts. Later, in October 2011, they set a further review hearing for April 2012 and it was made clear that the trial court would have the authority to review and apply all of the section 4320 factors at that time. Under these circumstances, the trial court was vested at the April 2012 review hearing with full authority to set support based on its determination of, among other things, Hill's efforts to become self-supporting since the settlement conference a year earlier. There was no error.

VII

*Attorney Fees*

Hill contends the trial court's failure to consider and apply all of the appropriate evidence to the 4320 factors affected not only its modification of spousal support but also its ruling on attorney fees. We have concluded already, however, that on the record before us we cannot review the trial court's application of the evidence to the 4320 factors. Thus, Hill's challenge to the attorney fee award on this basis is without merit for the same reason we found her challenge to the spousal support modification was.

Hill also contends the trial court did not correctly utilize the guidelines of Family Code sections 270, 271, and 2030 through 2032 in making its fee award. In particular, she appears to complain that the trial court did not properly determine that she had the ability to pay the fee award the court made and the trial court ignored the income discrepancy between the parties. She asserts that "[n]o judge could reasonably have

12

made the order considering all of the evidence that was clearly in [her] favor" and thus the $5,000 fee award was an abuse of discretion.

The obvious problem with Hill's argument is that, as we have noted already, the evidence that was before the trial court is not before us. This is as much true of the May 2012 attorney fees hearing as it was of the April 2012 support hearing. We recognize that the trial court's findings show that McKinley had substantially greater earnings than Hill. But given the incomplete record before us, under the authorities we have set forth already, we must assume both that the trial court found Hill had the ability to pay the award the court made and that there was evidence to support that finding notwithstanding the discrepancy in the parties' earnings. Given these assumptions, we cannot find that the trial court abused its discretion.

## DISPOSITION

The May 31, 2012, and June 1, 2012, rulings are affirmed. McKinley shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


      ROBIE      , J.



We concur:



      HULL      , Acting P. J.



      HOCH      , J.


13